*In re* FINN'S ·ESTATE.

FINN *v.* FINN.

1. APPEAL AND ERROR—ALLOWANCE OF EXECUTOR'S ACCOUNT—SCOPE OF REVIEW.
   On appeal from allowance of an executor's account it is the duty of the Supreme Court to determine whether the conclusions reached as to allowance or disallowance of items are supported by the findings, and whether the findings are supported by the evidence.

2. EXECUTORS AND ADMINISTRATORS—EXTRAORDINARY SERVICES—UNAPPEALED ORDERS—RES JUDICATA.
   Unappealed order of probate court allowing executor's account and petition for extraordinary services is *res judicata* of. his claim for such services for period covered thereby.

3. Same—Extraordinary Services—Discretion of Court.

Reasonable value of extraordinary services rendered by executor of an estate is a discretionary matter for the trial court and its determination will not be reviewed unless there is a manifest abuse of such discretion, hence allowance by probate court of $3,900, reduced to $2,700 by circuit court, besides statutory fee of $833.50, for conducting an $800,000 estate over a nine-months' period is affirmed by Supreme Court as equitable (3 Comp. Laws 1929, §§ 15929, 15976).

4. Same—Miscellaneous Expenses—Record.

Record showing allowance of $900 of claim for $1,150, covering bookkeeping services for $800,000 estate, and halving claims for auditing, rent, telephone, etc., by executor who did not use his bookkeeper or office exclusively for benefit of estate *held*, not to show justification for further reduction of such items.

5. Same—Use of Automobile to Collect Rents.

Allowance of $10 monthly for use of automobile for collecting rents from tenants occupying property of $800,000 estate, as reduced by trial court from claim of $20 a month *held*, supported by record on appeal and cross-appeal from allowance of an executor's account.

6. Appeal and Error—Questions Reviewable—Briefs.

Question regarding allowance of item of personal property tax, not briefed by litigants on appeal and cross-appeal from order allowing an executor's account, is not considered.

7. Executors and Administrators—Legal Services.

Judgment of trial court in allowing $3,000 on claim of $4,000 for legal services for executor's attorney *held*, supported by record showing hostile attitude of testator's heirs at law toward the executor, their uncle, and that the attorney did render valuable services to the estate, notwithstanding it was not involved in litigation.

8. Same—Interest on Bank Balances.

Refusal to charge executor interest on amounts he paid himself for services before account was allowed and on funds carried in commercial bank accounts is approved where current deposit interest rates are so low as not to justify remanding matter to circuit court for determination and record does not indicate amount executor would have earned had such sums been placed at interest nor how much surplus funds were necessary to operate business of $800,000 estate.

9. COSTS—APPEAL BY BOTH PARTIES.

  No costs are allowed to either party on appeal and cross-appeal
    from allowance of an executor's account where neither party
    prevails.

Appeal from Wayne; Verdier (Leonard D.), J., presiding. Submitted July 9, 1937. (Docket No. 139, Calendar No. 39,594.) Decided October 4, 1937.

In the matter of the estate of Matthew Finn, deceased. On petition of Joseph V. Finn, executor, for allowance of fourth account and for allowance for extraordinary services. Matthew M. Finn and Mary Elizabeth Finn, heirs at law, objected thereto. From order of probate court, the executor appealed and heirs at law cross-appealed to circuit court. From judgment in circuit court, executor appeals and heirs at law cross-appeal. Order of Supreme Court allowing Aldrich Baxter, administrator *de bonis non* with will annexed, to intervene as appellee and cross-appellant. Affirmed.

  *Bratton & Bratton,* for executor.

  *William V. Capler,* for heirs at law.

  *Aldrich Baxter,* administrator *de bonis non* with will annexed, *in pro. per.*

BUSHNELL, J. This is an appeal, by the sole surviving co-executor of the last will and testament of Matthew M. Finn, deceased, from an order and decree of the circuit court which allowed the fourth account of the executor with changes in the amounts of certain items claimed therein. Matthew M. and Mary Elizabeth Finn, children and heirs at law of the deceased, and the administrator *de bonis non*

with will annexed of said estate, filed a cross-appeal. A jury trial was waived in the circuit court.

We said, *In re Grover's Estate,* 233 Mich. 467, that:

"It is our duty to determine whether the conclusions reached as to the allowance or disallowance of items are supported by the findings, and whether the findings are supported by the evidence. We must therefore review the disputed items and announce our conclusions relative to them. *In re Saier's Estate,* 158 Mich. 170, 173."

The Finn estate, in 1932, consisted of real estate, stocks and bonds of the approximate value of $800,000. The testator was indebted to a bank in excess of $600,000, against which loan he had pledged certain collateral as security. Detroit Trust Company, corporate successor of Detroit & Security Trust Company, and testator's brother, Joseph V. Finn, were appointed and qualified as co-executors. They acted jointly until the latter part of 1934 when the Trust Company resigned and a third and final account of the corporate executor and a third account of its co-executor Finn was filed for the period ending October 30, 1934. No appeal was taken from the allowance of this account in the probate court which allowance included an item for extraordinary services to the date mentioned.

Plaintiff Finn's fourth account covers a period beginning November 1, 1934, and ending July 31, 1935, and includes a claim for extraordinary services rendered prior to the date he became sole executor as well as thereafter.

Finn's claim for extraordinary services prior to November 1, 1934, was properly disallowed. The unappealed order of the probate court allowing the co-executors' third account and their petition for

an allowance for extraordinary services was *res judicata* of Finn's claim for such services prior to November 1, 1934. *McDannel* v. *Black*, 270 Mich. 305.

The probate judge allowed the surviving executor $3,900 on his claim of $8,800, for extraordinary services during the period covered by his fourth account, and the circuit judge allowed this item of the account, on appeal, at $2,700. The court also found that the executor having collected $41,675.20 during the period covered by his account, he was also entitled to a statutory fee of $833.50.

The statute (3 Comp. Laws 1929, § 15929) defines extraordinary services as those "not required of an executor or administrator in the common course of his duties," and those performed "in cases of unusual difficulty or responsibility." The amounts allowed in such instances shall be those "the judge of probate shall deem just and reasonable."

Upon appeal, under 3 Comp. Laws, 1929, § 15976, it is the duty of the circuit court "to settle the account in controversy." *Hall* v. *Grovier*, 25 Mich. 428, 438.

The trial court discussed this item in detail in its opinion, which we would quote if space permitted. The record refers to a tentative agreement, made between counsel, covering the value of the extraordinary services to be rendered by the surviving executor, after the acceptance of the resignation of the corporate executor.

The court said:

"While it is true that attorneys couldn't agree among themselves, and bind the acts of another by doing so, in fixing the amount, nevertheless, I do feel that this $300 a month which was at least tentatively agreed upon as a compensation is a fair compensation, and as I said, the expenses—the services were extraordinary not because of any specific thing

he has done, but on account of the size of the estate, and its complicated condition. This is the only thing that justifies extraordinary fees in this case. I think an allowance of $300 a month for the nine months covered by this period, $2,700, is an ample, a liberal allowance.''

The executor argues that he was, in reality, conducting the unusually complicated going business of a very wealthy man, by the express desire and request of its former owner, and that the circuit judge had an erroneous conception of the true rule to be applied in the light of present day business, because the court said that throughout the few available authorities on the subject there runs ''the theory that a person appointed executor or trustee is appointed with the idea that an honor, a position of trust is being conferred upon him; not a position that he is to use to enrich himself.''

The trial judge gave as an illustration the quotation from *Wisner* v. *Mabley Estate*, 70 Mich. 271, that ''the position should never be sought or given with a desire to make money or profit.''

Cross-appellants argue that the court was in error in allowing any amount for the claimed item of extraordinary services, and seek to limit such services to those enumerated in the *Mabley Case, supra*. The enumeration was used by the court in the *Mabley Case* for the purpose of illustration and not by way of limitation.

We have difficulty in reconciling the arguments of cross-appellants on this question. They claim the trial court erred in its order and yet almost eight pages of cross-appellants' brief are devoted to a quotation from the trial judge's opinion, preceded by the statement—''The trial judge in his opinion summed up the question of extraordinary services so well that we quote,'' etc.

Study of the argument in the respective briefs and the detailed discussion of the problem in the court's opinion, does not indicate that "there was a gross abuse of discretion on the part of the trial court which prevented the appellant from receiving equity due him," as is claimed in his brief.

The reasonable value of extraordinary services rendered by the executor is a discretionary matter for the trial court, *Becht* v. *Miller*, 279 Mich. 629, and unless there is a manifest abuse of this discretion the trial court's determination will not be reviewed. *In re McNamara's Estate*, 166 Mich. 451.

Cross-appellants claim the allowances for salaries, rent, telephone and legal services are excessive; that the items of automobile expense, auditing, accounting, miscellaneous expense and personal property tax, are not proper charges against the estate and should have been disallowed, and that the executor should have been charged with interest on advance payments to himself and on surplus cash kept on deposit in commercial accounts which should have been earning interest in a savings account.

The salary item of $1,150, covering the bookkeeping services of George Orlowe, was allowed at $900. It was necessary to keep a set of books of various transactions in the estate after the resignation of the corporate executor, but this employee also performed personal services for Joseph Finn and the trial judge determined that $250 of the amount claimed should be charged against Finn. Cross-appellants' brief does not refer to any testimony from which we can determine that the reduction should have been greater, other than the bare statement that Orlowe was the secretary of a realty company operated by Finn and that he also received an agent's commissions on insurance purchased by the estate. Finn did not use his office exclusively for

the benefit of the estate, and for this reason his claimed expenditures for auditing, rent, telephone, etc., were cut in half. We find nothing in the record to justify further reductions in these items.

The amount of $20 per month claimed for automobile expense was supported by testimony to the effect that it was necessary to call upon those tenants of the estate who did not pay their rentals at the executor's office, and an automobile belonging to the son of appellant was used for that purpose. Itemized statements were not furnished covering expenditures for gasoline, oil, etc. The trial judge said:

"I am sorry to say that it is just another one of the instances in which this executor tried to overcharge this estate. It is those little things that show what his attitude of mind is. A generous allowance for the use of this automobile, and I concede that it should be used, would be $10 a month, and that is a very generous allowance, because even that would enable it to reach 780 miles and collect the rent."

Determination of the correct allowance of the foregoing and other items is a matter of judgment and we are only concerned with seeing that the trial court's findings are supported by the evidence. *In re Grover's Estate, supra.* We find that the record contains the necessary testimony.

The question regarding the item of personal property tax is not briefed and will not be considered.

Cross-appellants say the estate was not involved in litigation and, therefore, the incurring of the expenses for legal services was unnecessary. The executor claimed $4,000 on this item, the probate judge allowed $2,500, and the circuit judge increased this amount to $3,000. Testimony was introduced showing that the services of the executor's attorney were reasonably worth $5,000. The trial judge's

statement in his opinion, that cross-appellants' attitude toward their uncle, the executor, made it necessary for Finn to have "a lawyer at his elbow to consult every minute" finds ample support in the record which also shows that valuable services were rendered by the attorney to the estate. The tests stated in *McGraw* v. *Township of Lake,* 266 Mich. 38, were properly applied by the court in determining the value of the legal services, and the judgment of the trial judge will not be disturbed.

Cross-appellants ask that the executor be charged with interest on the bank balances in the estate's commercial accounts, citing, *In re Brewster's Estate,* 113 Mich. 561. Cross-appellants' brief says:

"The circuit court did not make any interest charge, but did take into consideration these facts in making his allowance for extraordinary services."

This item at current deposit interest rates, would be too small to justify remanding the matter to the circuit court for determination and we do not find any testimony in the record showing how much the executor would have earned by way of interest, had he not paid himself for services before his account was allowed, and if he had kept the surplus funds of the estate in an interest-earning account; nor do we know how much surplus should have been carried in a commercial account in order to operate the business of the estate. Under these circumstances the court's refusal to charge the executor with interest is approved.

The judgment of the circuit court is affirmed. Both parties having appealed and neither having prevailed, no costs will be allowed.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.